**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 21-cv-02112-CMA-KAS

SMITH SPORT OPTICS, INC., and
KOROYD SARL,

      Plaintiffs,

v.

THE BURTON CORPORATION,

      Defendant.

---

## ORDER ON CLAIM CONSTRUCTION

---

This matter is before the Court on the parties' Joint Motion for Determination of Claim Construction. (Doc. # 123.) Having reviewed and considered the parties' claim construction briefs, (Docs. ## 106, 111, 116, 140–42), the applicable case law, and the arguments and evidence offered at the August 6, 2024 Claim Construction (or "*Markman*") Hearing, (Doc. # 149), the Court determines that only the terms "cavity" and "visible" require construction.

## I.    <u>BACKGROUND</u>

This patent infringement action revolves around Patent No. 10,736,373 ("the '373 Patent" or "the Patent"), entitled "Helmet with Shock Absorbing Inserts" which Plaintiffs Smith Sport Optics, Inc, ("Smith") and Koroyd Sarl (collectively "Plaintiffs") obtained in 2020. (Doc. # 107-1.) The patented "vented helmets" feature "a shell, a shock absorbing

liner, one or more cavities, and one or more shock absorbing inserts having certain array structures, such as Koroyd technology, positioned in or within one or more cavities." (Doc. # 1 at ¶ 15); *see also* (Doc. # 107-1 at 2.) Plaintiff Smith began selling helmets—including the "Vantage" ski and snowboard helmet, and the "Forefront" bike helmet—based on the patented technology in 2013, the same year Plaintiffs applied for the Patent. (Doc. # 1 at ¶ 3.) Images of the "Vantage" and "Forefront" show a green material with a honeycomb-like structure—the shock absorbing insert—visible through gaps in a black outer shell. (*Id.* at ¶¶ 16–17.)

In 2021, Defendant The Burton Corporation ("Burton") introduced new helmets— the Anon helmets—which use "WaveCel" technology, a shock-absorbing material produced by WaveCel, an Oregon-based company. (Doc. # 1 at ¶ 22.) WaveCel is somewhat similar in appearance to Koroyd, in that it uses bonded sheets of shock-absorbing material that give WaveCel a somewhat honeycomb-like appearance. Marketing materials for Burton's helmets show the green WaveCel material visible through gaps in a black outer shell. (*Id.* at ¶¶ 27–28, 30.)

Plaintiffs initiated the instant lawsuit on August 4, 2021. (Doc. # 1.) In their Complaint, Plaintiffs bring one claim of patent infringement in violation of 35 U.S.C. § 271 against Burton. (*Id.* at ¶¶ 46–51.) Plaintiffs seek to recover all monetary damages caused by Burton's alleged infringement of the Patent, as well as enhanced damages consisting of attorneys' fees, costs, and prejudgment interest. They also seek to enjoin Burton from further infringing the '373 Patent. (*Id.* at ¶¶ 52–54.)

On July 28, 2023, the parties filed their Joint Disputed Claim Terms Chart, originally identifying ten terms and/or phrases from the '373 Patent for construction. (Doc. # 105.) Burton filed its Opening Claim Construction Brief on August 25, 2023. (Doc. # 106.) Plaintiffs responded on September 15, 2023 (Doc. # 111), and Burton filed its Reply on September 22, 2023 (Doc. # 116). On October 4, 2023, Plaintiffs filed a Motion for Leave to File Sur-Reply. (Doc. # 118.) The Court denied that Motion on October 13, 2023. (Doc. # 122.) The parties' Joint Motion for Determination of Claim Construction (Doc. # 123) followed.

On November 15, 2023, the Court granted (Doc. # 126) Plaintiffs' Emergency Motion to Continue (Doc. # 124) a previously scheduled claim construction hearing. Plaintiffs moved to amend their infringement contentions (Doc. # 127) which this Court referred to Magistrate Judge Kathryn A. Starnella (Doc. # 128). Judge Starnella granted that motion in part (Doc. # 135), allowing Plaintiffs to file their operative Third Amended Disclosure of Asserted Claims and Infringement Contentions (Doc. # 148-1).

Thereafter, the parties notified the Court of their joint request for supplemental briefing regarding one additional term for claim construction. (Doc. # 137.) The Court entered the Amended Scheduling Order (Doc. # 138), pursuant to which Burton filed its Supplemental Claim Construction Brief (Doc. # 140) on June 11, 2024. Plaintiffs responded (Doc. # 141) on June 25, 2024, and Burton replied (Doc. # 142) on July 9, 2024. On July 22, 2024, Plaintiffs again moved to continue the Claim Construction hearing. (Doc. # 143.) After receiving expedited briefing from both parties (Docs. ## 144–46), the Court denied that Motion on July 26, 2024. (Doc. # 147.)

Following supplemental briefing, the parties dispute the meaning of a total of eleven claim terms in the Patent: (1) cavity, (2) "a cavity that extends from and that spans across at least a portion of each of the first and second openings," (3) "positioned within a perimeter," (4) vent, (5) "a plurality of vents," (6) "each of the plurality of vents," (7) an array of [energy absorbing cells/tubes]; each having respective open first longitudinal ends and open second longitudinal ends," (8) "an array of [hollow structures/tubes] defining a plurality of adjacent through-passages extending through a thickness of the shock absorbing insert," (9) visible, (10) insert, and (11) "a shock absorbing insert." The Court held a *Markman* hearing on this matter on August 6, 2024, and took the matter under advisement. (Doc. # 149.)

## II.   <u>LEGAL STANDARDS</u>

The fundamental purpose of a patent is to give notice to others of that in which the inventor claims exclusive rights. *Oakley Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1340 (Fed. Cir. 2003). Because "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court," *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), courts engage in claim construction with the purpose of "determine[ing] the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quotation and alteration omitted). This process is guided by the precedent of the United States Court of Appeals for the Federal Circuit. *Frac Shack Inv. v. Fuel Automation Station, LLC*, 300 F. Supp. 3d 1333, 1338 (D. Colo. 2018) (citing *SunTiger Inc. v. Sci. Rsch. Funding Grp.*, 189 F.3d 1327, 1333 (Fed. Cir. 1999)).

When construing the words of a claim, courts "indulge a heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (quotation omitted). The ordinary and customary meaning is the "meaning that the term would have to a person of ordinary skill in the art [("POSITA")] in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). In circumstances where the ordinary and customary meaning controls, the court need not expressly construe a term. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) ("The district court did not err in concluding that these terms have plain meanings that do not require additional construction.").

Claim construction begins with the language of the claims themselves. *Phillips*, 415 F.3d at 1314. General descriptive terms are ordinarily given their full meaning, and modifiers will not be added to broad terms standing alone. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). Language from independent claims must be construed with dependent claims in mind. *E.g.*, *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1378 (Fed. Cir. 2018). The doctrine of "claim differentiation" creates a rebuttable presumption that, when a dependent claim adds a particular limitation, the independent claim from which the dependent claim derives does not claim said limitation. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006).

The claim language, however, is not read in a vacuum, but "in the context of the entire patent." *Phillips*, 415 F.3d at 1313. The language is considered in light of other

"intrinsic evidence": the specification and prosecution history. The specification is "the primary basis for construing the claims." *Grace Instrument Indus., LLC v. Chandler Instruments Co., LLC*, 57 F.4th 1001, 1008 (Fed. Cir. 2023) (quoting *Phillips*, 415 F.3d at 1314–15). The prosecution history reflects "an ongoing negotiation between the [Patent and Trademark Office] and the applicant," and can sometimes demonstrate that the inventor limited or disclaimed some portion of a claim. *Phillips,* 415 F.3d at 1314. Generally, neither the specification nor the patent prosecution history can be used to import limitations into the claims. *Id.* at 1323. Two exceptions apply: (1) when "a patentee sets out a definition and acts as his own lexicographer" or (2) when "the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

In addition to this intrinsic evidence, courts may look to extrinsic evidence—including expert and inventor testimony, dictionaries, and treatises—when construing patent claims. *See Takeda Pharm. Co. Ltd. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1363 (Fed. Cir. 2014). Yet, "while extrinsic evidence can shed useful light on the relevant art, . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1397 (Fed. Cir. 2008) (quotation omitted).

Finally, a court construes claims without regard to the accused device. *See Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1333 (Fed. Cir. 2000). Accordingly, to the extent that the parties have made arguments about whether certain

elements of the relevant claims are found within any device or to the extent the parties have sought to use any device as a demonstrative (such as during oral argument), this Court does not consider those arguments or those demonstrations for the purpose of claim construction.

### III.    ANALYSIS

### A.    POSITA, DEFINED

Before claims can be construed, the POSITA must be defined. *Lasermarx, Inc. v. Hamskea Archery Sols. LLC*, No. 22-cv-01956-NYW-KAS, 2024 WL 1239940, at *6 (D. Colo. Mar. 22, 2024) (collecting cases). A person's "ordinary skill in the art" is "the level of technical knowledge, experience, and expertise possessed by a typical engineer, scientist, designer, etc. in a technology that is relevant to the invention. *Id.* (citation omitted). Both parties agree that a POSITA in this case "would have had a Bachelor's degree in mechanical engineering, industrial design, or a similar such degree, and at least two years of experience with helmet design" with the possibility that additional education could have substituted for experience and vice versa. (Doc. # 112 at 5; Doc. # 117 at 7.) Plaintiff's expert, Stephanie Bonin, articulates and additional characteristic of a POSITA, that they "would have had familiarity with the material and manufacturing processes [of helmets.]" (Doc. # 112 at 5.) Burton's expert, Steven Copeland, asserts that, at least for the purposes of the opinions expressed in his report, he did not believe this difference to be material. (Doc. # 117 at 8.) At the *Markman* Hearing, Burton stated that "there is a difference of opinion between the parties on [the definition of a POSITA]

to some extent. [But,] for purposes of today's hearing, I don't think that's likely to come up." (Tr. at 27.)[1]

Dr. Bonin does not specify what level of familiarity with helmet materials and manufacturing processes a POSITA would have possessed. The Court concludes that an individual with at least two years of experience in helmet design would necessarily have had some level of familiarity with helmet materials and manufacturing. As Dr. Copeland's additional characteristic is encompassed within the education and experience requirement agreed to by both parties, the Court will define a POSITA for the purposes of claim construction as an individual with a Bachelor's degree in mechanical engineering, industrial design, or a similar such degree, and at least two years of experience with helmet design. (Doc. # 112 at 5; Doc. # 117 at 7.)

## B.    CLAIM TERMS

1.    Cavity

| PLAINTIFFS' PROPOSED CONSTRUCTION | BURTON'S PROPOSED CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| "an unfilled space such as an opening or recess" | "a cutout or gap in the shock absorbing liner which has the shape of the shock absorbing insert and into which the insert can fit but the wearer's head cannot" | "an unfilled space such as an opening or recess other than the bowl shape that is configured to receive a wearer's head" |

The word cavity appears in independent Claims 1, 9, and 12, as well as dependent Claims 10 and 13. (Doc. # 107-1 at 12–13.) For example, Claim 1 recites a helmet, comprising in part "a shock absorbing liner adjacent to and attached to the shell

---

[1] Neither party requested a copy of the hearing transcript, so it is not docketed on CM/ECF.

and comprising a cavity." (*Id.* at 12.) Similarly, Claim 12 recites a helmet, comprising in part "a shock absorbing liner having a cavity." (*Id.* at 13.) Both Claims 1 and 12 recite "a shock absorbing insert positioned in and substantially filling the cavity." (*Id.* at 12–13.) Although Plaintiffs argue for a broad construction of this term—"an unfilled space such as an opening or recess"—they assert this construction is consistent with the plain and ordinary meaning of cavity. (Doc. # 111 at 10–11; Tr. at 37.) Burton, on the other hand, urges this Court to adopt a construction that (1) describes the cavity as "a cutout or gap" (2) requires the cavity to have "the shape of the shock absorbing insert," and (3) limits the size the cavity to that in which "the insert can fit but the wearer's head cannot." (Doc. # 105 at 5–6.)

Burton argues that Plaintiffs' proposed construction is broader than the meaning of "cavity" intended by the inventor and used throughout the claim language and specification. (Doc. # 106 at 7.) Specifically, Burton asserts that Plaintiffs' proposed construction of cavity would encompass two spaces not intended by the inventor: (1) the entire interior of the helmet (the portion that receives the wearer's head), and (2) a space Burton has called an "air channel." (Doc. # 106 at 16; Doc. # 116 at 6–8; Tr. at 20, 32–36.) This "air channel" is created when the shell's vent and an opening in the shock absorbing liner align, and a portion of the liner is positioned between the shell and the insert. Burton provided the below illustration—showing the shell in red, the liner in blue, the insert in green, and the cavity outlined by black dots—to illustrate this "air channel" (which is not explicitly referenced anywhere in the Patent and which Plaintiffs assert is part of the cavity (Tr. at 38–40, 42)).



As an initial matter, the Court agrees with Burton that the inventor did not intend "cavity" to include the entire interior space of the helmet meant for the wearer's head. The claim language refers to the cavity/cavities as being in—or defined by—the liner, and as being substantially filled with the insert(s). (Doc. # 107-1 at 12–13.) At times the cavities are referred to as "insert cavities," indicating they exist to receive the insert(s). (*Id.* at 13.) This claim language clearly excludes the "unfilled space" meant for a wearer's head, because if that space were substantially filled with a shock absorbing insert, the product would cease to function as a helmet. Further, in the specification, the Patent distinguishes between the cavity/cavities and the "bowl shape having a concave portion that is configured to receive a wearer's head." (*Id.* at 10.) During the *Markman* hearing, Plaintiffs asserted that a POSITA would understand that, in the context of the claims and specification, the "cavity" does not include the concave area which receives the wearer's head. (Tr. at 51–52.) However, Plaintiffs pointed to no specific intrinsic or extrinsic evidence to support this assertion.

It is appropriate for the Court to limit claim language where the inventor "acts as his own lexicographer." *Thorner*, 669 F.3d at 1365. The claim and specification language pointed to above demonstrate that the patentee used the term "cavity" in a

particular way—that is exclusive of the unfilled "bowl shape having a concave portion that is configured to receive a wearer's head"—in the '373 Patent. Therefore, the Court's construction of "cavity" incorporates this limitation. As pictured below, this limitation does not contradict Claim 14—which recites a helmet comprising a "shock absorbing liner having a cavity . . . and a shock absorbing insert positioned in and substantially filling the cavity . . . wherein the shock absorbing insert extends more than 50% of an interior area of the helmet," (Doc. # 107-1 at 13)—because the limitation only excludes the space configured to receive the wearer's head.



However, the Court concludes that Burton's other proposed limitations of "cavity" are impermissible for a variety of reasons. First, as described above, the claim language consistently recites the cavity/cavities as being in, or defined by the liner, and as being substantially filled with the insert(s). (Doc. # 107-1 at 12–13.) Thus, the addition of Burton's proposed language which describes the cavity as "in the shock absorbing liner" and "into which the insert can fit" are redundant. *See LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1328 (Fed. Cir. 2016) (rejecting the addition of words to claim construction which would render language redundant).

Second, in the specification the inventor defined cavity as "e.g., an opening, a recess." (Doc. # 107-1 at 10.) Where an inventor clearly defines a term in the specification, that definition controls. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1995) ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." (citing *Markman*, 52 F.3d at 979)). Burton points to no intrinsic or extrinsic evidence for the substitution of "opening" or "recess" for its proposed "cutout or gap." Thus, it would be inappropriate for the Court to stray from the patentee's own clearly stated definition.

Finally, Burton's proposed shape limitation (that the cavity "has the shape of the shock absorbing insert") would improperly restrict the claims. *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) (warning against reading "unstated limitations into claim language"). The claim language requires the shock absorbing insert to "substantially fill[] the cavity." (Doc. # 107-1 at 12–13.) If the cavity and the insert had the same shape, the insert would entirely fill the cavity. *See, e.g.*, *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1368 (Fed. Cir. 2004) ("The term 'substantial' is a meaningful modifier implying 'approximate,' rather than 'perfect.'"). The inventor's chosen word "substantially" would, thereby, be rendered superfluous. *See Otter Prods., LLC v. Treefrog Devs. Inc.*, No. 11-CV-02180-WJM-KMT, 2012 WL 4468211, at *20 (D. Colo. Sept. 27, 2012) ("The court must interpret claims so that no term becomes superfluous if possible."); *see also Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (observing that "[a]

claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so").

The specification also does not support Burton's proposed shape limitation. It is true that the specification describes the cavity as "configured to retain the shock absorbing insert" (Doc. # 107-1 at 12), or "having a shape to receive a shock absorbing insert" (*id.* at 10), and teaches that "[t]he shape of the insert relative to a shape of a cavity . . . is such that the insert must be deformed (e.g., compressed) in order to be removed from the cavity" (*id.* at 10–11). However, as pictured below, there exist multiple cavity and insert shape combinations that could conceivably meet the requirements of this claim and specification language.

 

Accordingly, the Court will not limit the cavity to the shape of the insert. *N. Telecom*, 215 F.3d at 1290.

In summary, the Court concludes that the inventor acted as his own lexicographer when he clearly defined "cavity" as an "opening or recess" separate and exclusive of the "bowl shape having a concave portion that is configured to receive a wearer's head." (Doc. # 107-1 at 10.) The Court must, therefore, limit the term "cavity" in a manner consistent with the inventor's particular definition. *Thorner*, 669 F.3d at 1365; *Vitronics Corp.*, 90 F.3d at 1582. However, Burton's proposed construction of cavity would impermissibly render some claim or specification language redundant or

superfluous, and improperly narrow the scope of the claims. *See Merck*, 395 F.3d at 1372; *N. Telecom*, 215 F.3d at 1290. The Court, therefore, rejects both parties' proposed constructions and crafts its own: "an unfilled space such as an opening or recess other than the bowl shape that is configured to receive a wearer's head." *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995) ("[T]he trial judge has an independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the adversary parties.").

2. <u>Cavity that extends from and that spans across at least a portion of each of the first and second openings</u>

| PLAINTIFFS' PROPOSED CONSTRUCTION | BURTON'S PROPOSED CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| plain & ordinary meaning; no construction necessary | "a cavity that abuts directly against the first and second vents" | plain & ordinary meaning; no construction necessary |

This phrase appears in Claim 12, which recites, in part:

> A helmet, comprising: a shell including a vent defining a first opening and a second vent defining a second opening; a shock absorbing liner adjacent to and attached to the shell, the shock absorbing liner having a cavity that extends from and that spans across at least a portion of each of the first and second openings[.]

(Doc. # 107-1 at 13–14 (incorporating correction.)) Burton proposes the construction "a cavity that abuts directly against the first and second vents" (Doc. # 106 at 12–16; Doc. # 116 at 9–11), while Plaintiffs advocate for this phrase's plain and ordinary meaning (Doc. # 111 at 14–16).

According to Burton, a "key difference" between Claim 1 and Claim 12 is that

> Claim 1 requires that "at least a portion of the shock absorbing liner is positioned between the shell and the shock absorbing insert," meaning that the "cavity" in claim 1 cannot extend all the way through the shock absorbing

liner. . . . Claim 12, by contrast, mandates that the cavity extend all the way through the shock absorbing liner because it must "extend[] from and . . . span[] across at least a portion of each of the first and second openings[.]"

(Doc. # 106 at 14.) Burton illustrates this distinction below:

| Claim 12: "cavity that extends from and that spans across" the vents | Claim 1: "at least a portion of the shock absorbing liner is positioned between the shell and the shock absorbing insert" |
|---|---|
|  | |

By construing the phrase "a cavity that extends from and that spans across at least a portion of each of the first and second openings" as "a cavity that abuts directly against the first and second vents" Burton seeks to clarify "to jurors unschooled in geometry or engineering" the requirements implied by this claim language, pictured above left. Burton asserts that "[a] cavity that 'extends from' (in terms of its depth) and that 'spans across' (in terms of its length and width) . . . is simply 'a cavity that abuts directly against the first and second vents.'" (*Id.* at 13.)

Burton's arguments, however, misconstrue the purpose of, and legal standard employed in claim construction. Courts construe claims to determine "the meaning and scope of the patent claims asserted to be infringed," *O2 Micro*, 521 F.3d at 1360, mindful that the intended reader is a POSITA. *See Phillips*, 415 F.3d at 1312–13; *see also Grace Instrument*, 57 F.4th at 1008. Accordingly, the applicable legal standard is what a POSITA would understand of the claim scope when reading the disputed phrase in light of the specification and prosecution history. No matter how "accurate" or "proper"

Burton's proposed clarification may be (Doc. # 106 at 13), Courts do not construe claims to provide clarity to jurors or other lay individuals. *See Datacore Software Corp., v. Scale Computing, Inc.*, C.A. No. 22-535-GBW, 2023 WL 5207928, at *8 (D. Del. Aug. 14, 2023) (rejecting an "invitation . . . to apply[] the widely accepted meaning of a commonly understood word" in order to "assist the fact finder.").

Particularly where claim terms consist of non-technical, plain-English words, it is not the Court's job to act as a thesaurus. *See Brown v. 3M*, 265 F.3d 1349, 1352 ("[Terms that] are not technical terms of art . . . do not require elaborate interpretation."). Apart from "cavity"—construed above—the phrase "a cavity that extends from and that spans across at least a portion of each of the first and second openings" consists of non-technical terms which Burton has failed to argue the inventor imbued with idiosyncratic meaning.

The only evidence Burton points to in support of its proposed construction is an amendment Plaintiffs agreed to during the prosecution history. (Doc. # 106 at 16.) This prosecution history indicates that a previously identified Claim 48 read "the shock absorbing liner having a cavity that spans across at least a portion of each of the first and second openings." (Doc. # 107-6 at 147.) The examiner proposed the addition of "extends from and" to this language such that it would read "the shock absorbing liner having a cavity that **extends from and** spans across at least a portion of each of the first and second openings." (*Id.* at 143 (emphasis added.)) Following a phone call in which the prior art "Sundahl" was discussed (*id.* at 145), Plaintiffs authorized this amendment on the basis that it "resolve the remaining issues and place the application

16

in condition for allowance." (*Id.* at 147.) According to Burton, this indicates that Plaintiffs "obtained [their] patent only by accepting the limitations imposed by the Examiner. . . . and [they are] not now free to assert a broader view of [the] invention." (Doc. # 106 at 16 (*quoting Graham v. John Deere Co.*, 383 U.S. 1, 34 (1966).)

This argument also misses the mark. Plaintiffs do not now "assert a broader view of the invention," they argue only for the ordinary and customary meaning of the disputed phrase, including the addition of "extends from and" as amended during the prosecution history. The Court sees no proper reason to stray from the language "carefully crafted to reflect [the invention's] limitation," *Graham*, 383 U.S. at 34, or from the "heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness*, 288 F.3d at 1366. Therefore, the Court declines to expressly construe this term. *See ActiveVideo Networks*, 694 F.3d at 1326.

3.    "Positioned within a perimeter"

| PLAINTIFFS' PROPOSED CONSTRUCTION | BURTON'S PROPOSED CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| plain & ordinary meaning; no construction necessary | "positioned entirely within a perimeter" | plain & ordinary meaning; no construction necessary |

In addition to the vents, liner, and cavity/cavities discussed above, Claim 1 recites

a shock absorbing insert . . . compris[ing] an array of energy absorbing cells, each having respective open first longitudinal ends and open second longitudinal ends, wherein the first longitudinal ends of a first plurality of adjacent cells of the array . . . are **positioned within a perimeter** of the first [vent] and the first longitudinal ends of a second plurality of adjacent cells of the array . . . are **positioned within a perimeter** of the second [vent] such that air is able to flow from an exterior side of the helmet through each of the first and second vents and through a respective one of the first and second plurality of adjacent cells toward an interior of the helmet.

17

(Doc. # 107-1 at 13 (emphasis added.)) Burton makes two arguments for why "positioned within a perimeter" should be construed to mean "positioned entirely within a perimeter": (1) where "Plaintiffs wished to claim a 'portion' of something, they did so explicitly" (Doc. # 106 at 18 (citing Doc. # 107-1 at 13)); and (2) *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1380 (Fed. Cir. 2007) stands for the proposition that where a patent describes components as within a specific space, those components must be contained entirely within the described space. (Doc. # 106 at 17–18.) Burton illustrates the difference between "positioned within" and "positioned entirely within" below:



(Doc. # 106 at 17.)

The Court disagrees with Burton. The claim language does not contain the word "entirely" and the Court sees no justification for straying from the claim construction principals that the patentee is entitled to the full scope of his chosen terms, and Courts should generally refrain from adding narrowing modifiers. *Johnson Worldwide*, 175 F.3d at 989.

Additionally, the Court concludes that *Motionless Keyboard* is distinguishable from the instant case. *Motionless Keyboard* involved the construction of claim terms in a

patent "directed to a keyboard input device that is ergonomically designed for hand-held use, with a grippable portion held by the fingers and a key arrangement within a concavity for actuation of individual keys by the thumb." *Motionless Keyboard Co. v. Microsoft Corp.*, No. Civ.04-180-AA, 2005 WL 1113818, at *13 (D. Or. May 6, 2005), *aff'd in part, rev'd in part*, 486 F.3d 1376 (Fed. Cir. 2007). The district court construed the claim term "thumb-associable cluster of keys forming a keyboard within said concavity" to require "that all keys comprising the keyboard must be contained **entirely** within the concave area and sunk below the surface of the housing, so that the thumb movement occurs within the concave area." *Id.* at *19. This construction was based in part on the purpose of the claim limitation—"for key actuation by the thumb 'within the concavity'"—and in part on the results of patent interference proceedings,[2] which distinguished the patent at issue from a competing patent claiming a "keypad surface" that was "substantially concave." *Id.* at *18. The Federal Circuit affirmed this construction. *Motionless Keyboard*, 486 F.3d at 1380–81.

In contrast, the '373 Patent was not subject to interference proceedings, and the purpose of positioning the "open first longitudinal ends" of the cells within the vent's perimeter—air flow—is served whether the cells are "entirely" or partially within the perimeter. In *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1364 (Fed.

---

[2] Patent interference is "a proceeding designed to resolve the question of invention priority when more than one applicant seeks a patent on substantially the same invention." *Motionless Keyboard*, 2005 WL 1113818, at *18 (citing *Stevens v. Tamai*, 366 F.3d 1325, 1330 (Fed. Cir. 2004)). Because patent "interference proceedings are part of the public record and shed light on the meaning of the claims, it is proper to rely on the record of those proceedings in construing the claims." *Id.* (quoting *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 872 (Fed. Cir. 1998)).

Cir. 2019), the Federal Circuit explains that the addition of the modifier "entirely" can result in a "much narrower" claim limitation than the plain meaning. Yet Burton's proposed narrowing is not supported by the claim language or the specification. Specifically, Burton's argument that where Plaintiffs' intended to claim "a portion of" something, they did so explicitly, is not dispositive because Burton presents no evidence that a POSITA would understand the absence of "a portion of" to mean "entirely" in the context of the Claim 1 and the entire Patent. *See Cannon Rubber Ltd. v. The First Years, Inc.*, 163 F. App'x 870, 875 (Fed. Cir. 2005) (concluding the district court "improperly added the limitation 'entirely' in its interpretation of the claim limitation 'diaphragm disposed in the body'" and explaining that the ordinary meaning of the simple, non-technical word "in" allows the claimed diaphragms to be "contained entirely and partially in the body."); *Rex Med., L.P. v. Intuitive Surgical, Inc.*, No. 19-005 (MN), 2020 WL 2128795, at *4 (D. Del. May 5, 2020) (rejecting Defendants' construction that "within" means "entirely within" and holding that the ordinary meaning of "from within" is "at least partially within.").

Therefore, the Court declines to construe "positioned within a perimeter." The Court agrees with Plaintiffs that the patentee used this term in line with its plain and ordinary meaning in the '373 Patent.

4.    <u>Vent</u>

| PLAINTIFFS' PROPOSED CONSTRUCTION | BURTON'S PROPOSED CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| plain & ordinary meaning; no construction necessary | "an opening in the shell that allows air to pass through" | plain & ordinary meaning; no construction necessary |

Vent appears in each of the independent claims: Claims 1, 9, and 12. (Doc. # 107-1 at 12–13.) As Burton points out, the claim language repeatedly refers to the vent or vents as openings in the shell. (Doc. # 106 at 19 (citing Doc. # 107-1 at 10–13.)) This is confirmed by both the Patent's specification and the images. (Doc. # 107-1 at 4–5, 7–8, 10–13.) The specification also explicitly states that the purpose of the vents is "to provide ventilation of the head of a wearer," or to allow for "air flow." (*Id.* at 10); *see also* (*id.* at 11, 13.) Based on this intrinsic evidence, Burton argues the Court should adopt its "straightforward . . . and otherwise non-controversial" construction. (Doc. # 106 at 19.)

Contrary to Burton's assertion that "[i]f Plaintiffs do not intend to argue that 'vent' encompasses more than an opening in the shell, then there is no dispute" (Doc. # 106 at 19–20), Plaintiff's contention that "vent" does not require construction and can be understood according to its ordinary and customary meaning (Doc. # 111 at 20–22), is a valid counterpoint during claim construction that a Court can adopt as its own conclusion. *ActiveVideo Networks*, 694 F.3d at 1326.

As discussed above, the Court is not required during claim construction to act as a thesaurus or to provide definitions of non-technical terms. *Brown*, 265 F.3d at 1352. "Vent" is a common, easily comprehensible word for which there is no indication that the inventor bestowed a unusual or particular meaning. Rather than supporting its proposed construction, the claim and specification language Burton points to confirms the ordinary and customary use of this word. Therefore, the Court agrees with Plaintiffs that no construction is necessary. *ActiveVideo Networks*, 694 F.3d at 1326.

5.    "A plurality of vents" & "Each of the plurality of vents"

| CLAIM TERM | PLAINTIFFS' PROPOSED CONSTRUCTION | BURTON'S PROPOSED CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|---|
| "a plurality of vents" | "at least two vents" | No construction necessary because the term in dispute is not "a plurality of vents," but rather "each of the plurality of vents" which Defendant has separately proposed for construction. | plain & ordinary meaning; no construction necessary |
| "each of the plurality of vents" | "each of the at least two vents" | "each of the vents in the helmet" | plain & ordinary meaning; no construction necessary |

The next two disputed claim terms are both used in Claim 1, which describes

a shell comprising **a plurality of vents** including a first vent defining a first opening and a second vent defining a second opening; a shock absorbing liner . . . comprising a cavity at least partially aligned with the plurality of vents; and a shock absorbing insert . . . visible through and [which] spans across at least a portion of **each of the plurality of vents**.

(Doc. # 107-1 at 12–13 (emphasis added.)) During the *Markman* hearing, Burton agreed that the ordinary and customary meaning of "plurality" is "two or more." (Tr. at 75); *see also* (Doc. # 116 at 12 ("Plaintiffs correctly note [that a plurality] can be two, three, or some larger number.")); *Dayco Prods. V. Total Containment, Inc.*, 258 F.3d 1317, 1327–28 (Fed. Cir. 2001) (holding that the ordinary definition of "plurality" when used in a claim, is "two or more"); *York Profs. V. Cent. Tractor Farm Family Ctr.*, 99 F.3d 1568, 1575 (Fed. Cir. 1996) ("The term [plurality] means, simply, 'the state of being plural.'"). Neither party argued, and the Court finds no evidence that the patentee intended to use

22

the word idiosyncratically or disclaimed its full scope. Accordingly, the Court concludes that "a plurality of vents" does not require construction as the inventor used it in its ordinary and customary way, easily comprehensible to a POSITA. *ActiveVideo Networks*, 694 F.3d at 1326.

The parties do, however, maintain a dispute regarding the successor phrase, "each of the plurality of vents." (Doc. # 106 at 20–24; Doc. # 111 at 24–29; Doc. # 116 at 12–14; Tr. at 75–81.) Burton's proposed construction—"each of the vents in the helmet"— drops the term "plurality" entirely. Burton argues this construction is appropriate because (1) Plaintiffs added the phrase "each of" during prosecution and are bound by their chosen language (Doc. # 106 at 21–22); and (2) other courts have concluded that "each" means "all" or "everyone of." (Doc. # 106 at 23–24; Doc. # 116 at 13–14 (citing *Mangosoft, Inc. v. Oracle Corp.*, No. Civ. 02–545–SM, 2004 WL 2193614, at *3 (D.N.H. Sept. 21, 2024); *Constructive Designs, LLC v. Pepsi-Cola Co.*, No. LA CV12-02765-JAK (PLAx), 2013 WL 12139423, at *16 (C.D. Cal. Mar. 13, 2013).)

The Court agrees with the logic of Burton's arguments, but not with its conclusions. Plaintiffs are, as Burton argues, bound by their chosen language. *Phillips*, 415 F.3d at 1314; *see also Graham*, 383 U.S. at 34. That language includes, not only the phrase "each of," but also the subsequent noun it modifies: "plurality." Accordingly, even if the Court were to agree that "each of" means "all" or "everyone of"—which the Court will address below—these adjectives continue to modify "plurality," as in, "all of the plurality of vents" or "everyone of the plurality of vents." Burton cites no case law discussing when, if ever, Courts may ignore or delete words from claim language during

claim construction. Rather, "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck*, 395 F.3d at 1372.

Turning to *Mangosoft* and *Constructive Designs*, the Court agrees that these cases are instructive, but not in a way that supports Burton's proposed construction. *Mangosoft* involved two patents which, taken together, taught a "distributed shared memory system," which allowed computers in a linked network to share volatile and non-volatile memory space. 2004 WL 2193614, at *3. One of the disputed claim terms was "each of said plurality of computers" in the context of claim language describing a "computer system having a shared addressable memory space, comprising . . . a plurality of computers, each of said plurality of computers sharing the shared addressable memory space." *Id.* at *5. The parties agreed that "plural" means "two or more" but disagreed as to whether "each of said plurality" referred to the same plurality of computers described earlier in the claim language. *Id.* In other words, the plaintiff argued that if "a plurality of computers" referred to five computers sharing memory space, "each of said plurality" could refer to two, or three of those computers. The defendant, on the other hand, argued that "each of said plurality" referred back to the same plurality, that is, all five of the computers making up the "computer system having a shared addressable memory space, comprising . . . a plurality of computers." *Id.*

The district court agreed with the defendant, explaining

the phrase "said plurality" refers to the plurality of computers that form the system. And, the word "each" refers to that *same* plurality of computers; it does not refer to a new, smaller subset of the original plurality of computers. Accordingly, the court construes the disputed language—"A computer system having a shared addressable memory space, comprising . . . a plurality of computers, *each of said plurality* of computers sharing the

> shared addressable memory space"—to mean: a computer system having a shared addressable memory space, comprising two or more computers, **every one** of which of [sic] those two or more computers participating in the system has access to, and may contribute to, the shared addressable memory space.

*Id.* (bold emphasis added). However, the district court went on to say that, based on other language in the patent, it agreed with plaintiff "to the extent it says that not all computers on a particular network must necessarily participate in the system." *Id*. at *6. In other words, where the patent recited "a plurality of computers" that plurality did not have to include all the computers; but where the patent referred to "each of said plurality" it required that all the computers **in the previously defined plurality** have access to, and may contribute to, the shared memory space.

Similarly, in *Constructive Designs*, the district court explained that the plain meaning of the word "each" is "every (individual or number) regarded or treated separately." 2013 WL 12139423, at *16. Put another way "each" "addresses every member of a group, but individually." *Id.* The district court therefore construed the word "each," as used in the phrase "each of the plurality of users," to mean "every one of." *Id.*

Applied to the instant case, *Mangosoft* and *Constructive Designs*[3] instruct that, the phrase "each of the plurality of vents" requires that the shock absorbing insert be visible through and span across all (or every one of) the vents **in the previously defined plurality**. This is not the same as requiring the insert be visible through and span **all (or each of) the vents in the helmet**. There may be other vents, not included

---

[3] The Court notes that it is not bound by either of these cases and rather relies on them as persuasive authority only. *See United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) (explaining that district courts "are not bound by decisions of other district courts").

in the precedent plurality, which need not have any particular relationship with the shock absorbing insert.

In summary, there is no indication that the inventor acted as his own lexicographer when he employed the words "each of" and "plurality," or when he combined them into the phrase "each of the plurality of vents." As these words, individually and collectively, carry their ordinary and customary meaning in the '373 Patent, the Court concludes that no construction is necessary. *ActiveVideo Networks*, 694 F.3d at 1326.

    6.    The two "array of" terms

| CLAIM TERM | PLAINTIFFS' PROPOSED CONSTRUCTION | BURTON'S PROPOSED CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|---|
| **"an array of [energy absorbing cells/tubes], each having respective open first longitudinal ends and open second longitudinal ends"** | plain & ordinary meaning; no construction necessary | "distinct [energy absorbing cells/tubes], each with a separate continuous wall and each with open longitudinal ends, arranged in an array" | plain & ordinary meaning; no construction necessary |
| **"an array of [hollow structures/tubes] defining a plurality of adjacent through-passages extending through a thickness of the shock absorbing insert"** | plain & ordinary meaning; no construction necessary | "distinct [hollow structures/tubes], each with a separate continuous wall defining a through-passage extending though a thickness of the shock absorbing insert, arranged in an array" | plain & ordinary meaning; no construction necessary |

The disputed "array" terms appear in Claims 1, 3, 12, and 15. Independent claim 1 recites, in part, "a shock absorbing insert . . . wherein the shock absorbing insert comprises an array of energy absorbing cells, each having respective open first longitudinal ends and open second longitudinal ends." (Doc. # 107-1 at 12–13.) Claim 3, which is a dependent claim, describes "[t]he helmet of claim 1, wherein the array of energy absorbing cells of the shock absorbing insert comprises an array of tubes." (*Id*. at 13.) Independent Claim 12 recites, in part, "a shock absorbing insert . . . wherein the shock absorbing insert comprises an array of hollow structures defining a plurality of adjacent through-passages extending through a thickness of the shock absorbing insert." (*Id*.) Like Claim 3, dependent Claim 15 describes "[t]he helmet of claim 12, wherein the array of hollow structures comprises an array of tubes oriented along the thickness of the shock absorbing insert." (*Id*. at 13.) Additionally, although not explicitly at issue, Claims 4 and 16 recite "[t]he helmet of claim **3**, wherein the tubes are cylindrical in shape" and "[t]he helmet of claim **15,** wherein the tubes are cylindrical or circular conical in shape," respectively. (*Id.*)

Throughout the claim construction materials, Burton treats the independent variations—"energy absorbing cells" (Claim 1) and "hollow structures" (Claim 12)—together with the word used in the dependent claims, "tubes." (Doc. # 106 at 25 n.6, 31 n.10); *see also* (Doc. # 105 at 8–9, 14.) According to Burton these recitations can be treated together because "energy absorbing cells" and "tubes" "themselves are not the issue in dispute." (Doc. # 106 at 25 n.6, 31 n.10.) However, this appears to be precisely the heart of the dispute about these phrases. Burton wishes this Court to construe both

array terms to require that "each" of the "energy absorbing cells" (Claim 1), "hollow structures," (Claim 12), or "tubes" (Claims 3 and 15), have "a separate continuous wall" (like drinking straws). Compare the array of separate-walled "cells"—pictured below left—with another array in which walls are shared, pictured below right.



Burton's proposed constructions would run afoul of several principles of claim construction. First, as discussed previously, "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck*, 395 F.3d at 1372. Further, "[d]ifferent claim terms are presumed to have different meanings," *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008), and the doctrine of "claim differentiation" creates a rebuttable presumption that, when a dependent claim adds a particular limitation, the independent claim from which the dependent claim derives does not claim said limitation. *Curtiss-Wright*, 438 F.3d at 1380. In other words, there is a rebuttable presumption that "energy absorbing cells" and "hollow structures" are not limited to "tubes," and further, that the "tubes" are not limited to being "cylindrical or circular conical in shape."

Yet, if "energy absorbing cells," "hollow structures," and "tubes" all require distinct, separate continuous walls, then all three of these distinct terms would carry the same meaning. Burton has not overcome the presumption against such a construction by, for example, pointing to evidence that the terms are used interchangeably. *See, e.g.*, *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010); *Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1361 (Fed. Cir. 2003). Rather, "energy absorbing cells" and "hollow structures" appear in separate independent claims, while "tubes" is used in the dependent claims.

The long history of modifications and amendments to the language used to describe the composition of the shock absorbing insert prior to the '373 Patent's issuance, is not dispositive. Burton does not point to a clear and unmistakable disavowal of claim scope by the patentee, absent which prosecution history cannot be used to import limitations into the claims. *See Sorensen v. Int'l Trade Com'n*, 427 F.3d 1375, 1378–79 (Fed. Cir. 2005). It is the final language of the claims that guides the Court's analysis. *Phillips*, 415 F.3d at 1314; *see also Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344, 47 U.S.P.Q.2d 1418 (Fed. Cir. 1998) ("Even within the intrinsic evidence, however, there is a hierarchy of analytical tools. The actual words of the claim are the controlling focus."). Following all the amendments and discussions of prior art, the resulting issued Patent uses three distinct terms in its claims: "energy absorbing cells," "hollow structures," and "tubes." Plaintiffs do not now seek to broaden the claims, but rather argue for the ordinary and customary meaning of the carefully

crafted language—the result of the long prosecution history—reflecting the invention's imitations. *See Graham*, 383 U.S. at 34.

Although Burton acknowledges the general principle of claim construction that holds that preferred embodiments do not act as claim limitations, it argues that because the "only 'insert' that Koroyd allegedly invented and contributed to the '373 patent is . . . constructed out of distinct tubes, each having its own separate and continuous walls," this Court should limit the claims accordingly. (Doc. # 106 at 24); *see also* (Doc. # 116 at 14–16.) In support, Burton cites several cases including *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 707 (Fed Cir. 2020), and *Wang Lab'ys, Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999). The Court, however, disagrees with the lessons Burton extracts from these cases. In *Apple*, the Federal Circuit stated that "when the invention as claimed covered **only the preferred embodiment described in the written description**, it is questionable **whether a patentee may assert a proposed construction that is broader than the plain language** of the claim." 949 F.3d at 707 (emphasis added). Similarly, in *Wang Lab'ys*, the Federal Circuit concluded that "the claims were correctly interpreted as limited" to the "**only embodiment described in the '669 patent specification**." 197 F.3d at 1383 (emphasis added).

In both these cases, and the others cited by Burton, the Federal Circuit is careful to say that, if the written description (or specification) describes only one embodiment, it may be appropriate to limit the claims to that embodiment. Contrary to Burton's argument, however, the specification in the '373 Patent does not describe only one embodiment:

- "in some embodiments, the second shock absorbing material **120** may be a honeycomb material" which "may . . . have tubes with open longitudinal ends that allow air to freely flow through the tubes . . . to the head of the wearer. For example, the honeycomb material includes tubes arranged in a closely packed array" (Doc. # 107-1 at 10);

- "In some embodiments, the second shock absorbing material **120** may be a porous shock absorbing material. For example, the second shock absorbing material **120** of the insert **126** may include a honeycomb material that includes an array of energy absorbing cells. In addition to providing impact absorption, each of the cells may include a tube, which may allow air to pass through . . . The tubes may be hollow structures having any regular or irregular geometry" (*id.*); and

- "The honeycomb material may have tubes that allow air to freely flow through to the head of the wearer. The honeycomb material may include an array of energy absorbing cells. Each of the cells may include a tube . . . The tubes may be a hollow structure having any regular or irregular geometry. In some embodiments, the tubes have a circular cylindrical structure or circular conical structure" (*id.* at 11).

This broad, permissive language describes a multitude of potential arrays which may make up the shock absorbing insert. See *In re Johnston*, 435 F.3d 1381, (Fed. Cir. 2006) ("As a matter of linguistic precision, optional elements do not narrow the claim because they can always be omitted."). Given these multiple descriptions, the Court

concludes that the instant case is not analogous to *Apple* or *Wang Lab'ys* and the claims should not be limited to a shock absorbing insert comprised of tubes with distinct, continuous walls.

In summary, Burton has not presented evidence sufficient to overcome the presumption that "energy absorbing cells," "hollow structures," and "tubes"—all of which must be arranged in arrays in the shock absorbing liner—have different meanings. Therefore, the Court declines to construe them all as limited to "distinct" energy absorbing cells/hollow structures/tubes, "each with a separate continuous wall." Burton further has not pointed to evidence that the inventor used the individual words in the array phrases—or the phrases in their entirety—in a manner inconsistent with their ordinary and customary meaning, or that he clearly and unmistakably disavowed the full scope of these phrases. *Thorner*, 669 F.3d at 1365. Therefore, the Court declines to construe these terms. *ActiveVideo Networks*, 694 F.3d at 1326.

7.   <u>Visible</u>

| PLAINTIFFS' PROPOSED CONSTRUCTION | BURTON'S PROPOSED CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| "capable of being seen" | "readily seen through the helmet vents without shining a light through the vents" | "capable of being seen during ordinary use" |

"Visible" appears in Claim 1 and Claim 12. Both claims recite "a shock absorbing insert positioned in and substantially filling the cavity such that the shock absorbing insert is **visible** through and spans across at least a portion of each of [some combination of] vents." (Doc. # 107-1 at 12–13 (emphasis added.)) Although "visible" is a non-technical term, used according to its ordinary and customary meaning in the '373

Patent, the parties dispute the scope of the term, and therefore request the Court define that scope. *See O2 Micro*, 521 F.3d at 1360–62 (explaining that "[a] determination that a claim term . . . has the 'plain and ordinary meaning' may be inadequate when . . . for example . . . [the parties] dispute the scope of that claim term.").

The Court concludes that Burton's proposed construction is impermissibly narrow and not grounded in claim construction principles. *See generally* (Docs. ## 140, 142.) Plaintiffs' construction, however, simply recites the ordinary and customary meaning of "visible" (Doc. # 141), and as such, does not resolve the parties' dispute. *O2 Micro*, 521 F.3d at 1360–62. Therefore, the Court crafts its own construction: "capable of being seen during ordinary use." *Exxon Chem.*, 64 F.3d at 1555.

The Court finds *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1320–21 (Fed. Cir. 2016), instructive. *Eon Corp.* involved a dispute regarding the terms "portable" and "mobile" in the context of a patent specification describing "low-cost portable battery operated milliwatt transmitter subscriber units" that "may be moved throughout the base station geographical area." *Id.* at 1321. During claim construction, the defendant sought constructions for "portable" and "mobile" that did "not cover fixed or stationary products that are only theoretically capable of being moved," while the plaintiff argued the terms could be understood according to their plain and ordinary meaning. *Id.* at 1317. The district court agreed with plaintiff and declined to construe the terms. *Id.*

The Federal Circuit determined this constituted legal error under *O2 Micro* and explained that

> A party is [] "not entitled to a claim construction divorced from the context of the written description and prosecution history." *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1144–45 (Fed. Cir. 2005). Ordinary meaning is not something that is determined "in a vacuum." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005). To the contrary, "a word describing patented technology takes its definition from the context in which it was used by the inventor." *Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1348–49 (Fed. Cir. 1998).

*Id.* at 1320. Accordingly, the Federal Circuit concluded that the plaintiff was not entitled to broad interpretations of "portable" and "mobile" which would include "essentially, anything that is theoretically capable of being moved. . . . which could include a house, perhaps, but not a mountain." *Id.* at 1321.

In the instant case, the specification clearly describes a helmet meant to be used during outdoor activities, such as cycling, skiing, and snowboarding. (Doc. # 107-1 at 10.) This is the context in which the inventor claimed shock absorbing inserts "visible" through the shell's vents. It is also the context through which a POSITA would seek to understand the limitations of the claimed invention. Accordingly, the Court concludes that it is proper to limit the scope of "visible" to the context of a helmet in ordinary use.

8.   Insert & "a shock absorbing insert"

| CLAIM TERM | PLAINTIFFS' PROPOSED CONSTRUCTION | BURTON'S PROPOSED CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|---|
| **insert** | "a structure configured to be inserted into the cavity" | No construction necessary.[4] | plain & ordinary meaning; no construction necessary |

---

[4] Previously, in addition to its primary argument that "insert" did not require construction, Burton provided an alternate construction: "a structure that has the shape of the cavity and is capable of being inserted into the cavity." (Doc. # 105 at 7; Doc. # 106 at 32.) However, during the *Markman* hearing, Burton withdrew this alternate construction and stated that its "position is that no construction is necessary." (Tr. at 127–28.)

| "a shock absorbing insert" | Conceded at *Markman* hearing that no construction is necessary. | No construction necessary. | plain & ordinary meaning; no construction necessary |
|---|---|---|---|

As an initial matter, although previously arguing for "a shock absorbing insert" to be construed as "an insert made of a shock absorbing material" (Doc. # 105 at 8; Doc. # 111 at 41–43), during the *Markman* hearing, Plaintiffs stated they would "be fine with the Court entering a plain and ordinary meaning as to" this term. (Tr. at 125.) The Court agrees that this term does not require construction as it is employed in the '373 Patent according to its customary and ordinary meaning. *ActiveVideo Networks*, 694 F.3d at 1326.

The final disputed term, then, is "insert," which appears in all three of the independent claims (Claims 1, 9, and 12), as well as in dependent Claims 3, 5–6, 8, 10–11, 13, 15, and 17. (Doc. # 107-1 at 12–13.) Burton argues that no construction of "insert" is necessary (Doc. # 106 at 32–33), while Plaintiffs advocate for the construction "a structure configured to be inserted into the cavity." (Doc. # 111 at 39–41.)

Plaintiffs' proposed construction, however, is the ordinary and customary meaning of insert. *See Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1337 (Fed. Cir. 2008) (explaining that the ordinary meaning of "insert" is "something inserted or intended for insertion.). Indeed, Plaintiffs consistently argue that the ordinary and customary meaning of "insert" is consistent with the '373 Patent's claim language and specification. (Doc. # 111 at 39–41.)

The dispute that Plaintiffs raise revolves around whether "a 'structural' vent cover that is in-molded with the foam liner . . . meets the 'shock absorbing insert' limitation."

(Doc. # 111 at 39 citing (Doc. # 113-4 at 3.)) This argument appears to relate to validity concerns. It is a basic tenant of patent law that claims should be construed in a manner that will preserve the validity of the claims if such a construction is "practicable," that is, based on sound claim construction principles, and [without] revis[ing] or ignore[ing] the explicit language of the claims." *Generation II Orthotics Inc. v. Medical Technology Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001). In the instant case, declining to construe "insert"—because the inventor employed the word according to its ordinary and customary meaning in the '373 Patent—accomplishes all these goals.[5]

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that:

(1)    The parties' Joint Motion for Determination of Claim Construction (Doc. # 123) is GRANTED; and

(2)    The disputed claim terms of U.S. Patent No. 10,736,373; are hereby CONSTRUED as set forth herein.

DATED: August 20, 2024

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

---

[5] The Court makes no findings or related ruling as to whether the FOX Striker Helmet (depicted in both Plaintiffs' response (Doc. # 111 at 39) and the excerpt of Burton's First Amended Invalidity Contentions (Doc. # 113-4 at 3)) invalidates the '373 Patent. The parties did not explicitly argue validity and the Court lacks sufficient foundation to make any validity findings.